United States District Court
Southern District of Texas
**ENTERED**
March 24, 2025
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

|  |  |  |
|---|---|---|
| M S INTERNATIONAL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:23-CV-00088 |
| | § | |
| EDCO EXPRESS LOGISTICS, LLC., | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

This action arises out of a dispute between Plaintiff MS International, Inc. ("Plaintiff") and Defendant EDCO Express Logistics, L.L.C. ("Defendant") over storage rates for building materials. Plaintiff alleged that Defendant overcharged Plaintiff for storage services and brought a series of tort and contract claims against Defendant. (Dkt. 1 at 4–7.) Plaintiff filed a Motion for Partial Summary Judgment on its breach of contract claim, and money had and received claim. (Dkt. 55 at 3–6.) Defendant filed its own Motion for Partial Summary Judgment arguing that it was entitled to judgment as a matter of law on Plaintiff's fraud and fraud in the inducement claims. (Dkt. 56 at 14, 16.) For the reasons discussed below, the Court DENIES Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Partial Summary Judgment.

### Background

**A.    Factual Background**

From June 2022 to July 2023, the parties had an active business relationship. (Dkt. 55 at 5, Dkt. 54 at 104:9–11.) While the parties generally agree on why they began to work with one another, the parties heavily dispute the basis and exact contours of their business relationship.

1 / 25

Plaintiff is a building material supplier and often needs to acquire storage space to store the materials it imports from Mexico into the U.S. (Dkt. 1 at 1.) To accomplish this, Plaintiff relies on "domestic logistics companies" to store its materials in the U.S. (*Id.* at 3.) On May 24, 2022, Plaintiff's corporate representative and Vice President of International Logistics Glenda Valdez ("Ms. Valdez") contacted Luis Rodriguez ("Mr. Rodriguez"), a partner of Defendant's business, to inquire about available storage space in Laredo. (Dkt. 55, Attach. 1 at 32–33; Dkt. 54 at 9:9–13; Dkt. 56, Attach. 4 at 21:9–14.)[1] Mr. Rodriguez introduced Ms. Valdez to the Defendant's owner, Antonio Eduardo Covarrubias ("Mr. Covarrubias") via e-mail to discuss the possibility of storing Plaintiff's materials at Defendant's warehouse. (Dkt. 55, Attach. 1 at 28.)

On May 30, 2022, Mr. Covarrubias provided Ms. Valdez with a presentation that described Defendant's business and detailed its rates for unloading, loading, and storage per pallet of merchandise. (Dkt. 55, Attach. 1 at 11–18; Dkt. 62, Attach. 1 at 9–18.) Mr. Covarrubias provided Ms. Valdez a quote dated that same day. (Dkt. 59, Attach. 2 at 2.) Under the terms of this price quote, Defendant would charge sixty cents per pallet per day for storage, a $3.80 loading fee per pallet, $3.80 unloading fee per pallet, and a $15.00 printing and labeling fee to be charged when the pallets left the warehouse. (*Id.*). Both parties agree Plaintiff rejected this quote from May 30, 2022. (Dkt. 62 at 8.) The parties also agree that they continued to negotiate rates over the phone and reached an agreement. (Dkt. 54 at 13:10–24, 103:17–104:3; Dkt. 56, Attach. 6 at 30:16–23.) However, the parties strongly dispute the terms of their agreement.

1.      **Plaintiff's Account of the Parties' Agreement**

---

[1] The parties have labeled their sub-filings as "Exhibits." However, the Court will use "Attachment" to refer to these filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

Plaintiff claims it rejected Defendant's price quote from May 30, 2022, because the rate was too high compared to the market rate. (Dkt. 54 at 13:14–16, 17:2–19.) After Plaintiff rejected this quote, Ms. Valdez negotiated new rates with Mr. Covarrubias over the phone. (*Id.* at 13:14– 14:5.) She explained that she and Mr. Covarrubias would always conduct business over the phone, although they would sometimes e-mail each other first to find a time to speak. (*Id.* at 13:21–14:5.) Plaintiff contends it was in one of their conversations that Ms. Valdez reached an agreement with Mr. Covarrubias for storage of Plaintiff's merchandise at Defendant's warehouse. (*Id.*, 18:8–14; Dkt. 55, Attach. 1 at 24–25.)

Plaintiff asserts the parties memorialized this agreement in a signed quote dated June 6, 2022. (Dkt. 1 at 3; Dkt. 54 at 18:6–14, 19:6–13; Dkt. 55 at 4.) Plaintiff claimed the parties agreed to the following rates: $150.00 per container of merchandise shipped to Defendant's facilities, which included thirty days of storage; $15.00 for printing and labeling; and $4.00 per pallet per month for pallets that remained stored at Defendant's warehouse past the initial thirty days. (Dkt. 55 at 2; *id.*, Attach. 1 at 43.)

Plaintiff alleges that Mr. Covarrubias signed the quote on behalf of Defendant, and Ms. Valdez signed on behalf of Plaintiff. (Dkt. 55 at 3; *id.*, Attach. 1 at 43.) Moreover, Plaintiff claims that Mr. Covarrubias sent Ms. Valdez the signed quote during the first week of June 2022. (Dkt. 56, Attach. 6 at 21:11–14, 22:14–20.) Plaintiff argues that this quote formed a valid contract between the parties and expressed the terms of their agreement. (Dkt. 55, Attach. 1 at 43; Dkt. 56, Attach. 6 at 21:4–22.)

### 2.    Defendant's Account of the Parties' Agreement

Defendant contends the parties arrived at a different agreement after Plaintiff rejected the quote from May 30, 2022. Defendant asserts that their oral negotiations led to the June 6, 2022,

quote. (Dkt. 56, Attach. 4 at 9:23–10:22.) It claims Plaintiff rejected the quote dated June 6, 2022, and neither party signed it. (Dkt. 56 at 17; *id.*, Attach. 4 at 23:1–12; Dkt. 59, Attach. 3 at 2.)

Defendant maintains that Ms. Valdez and Mr. Covarrubias reached an oral agreement two days before any merchandise arrived at Defendant's warehouse, different than the quote dated June 6, 2022. (Dkt. 56 at 14; *id.*, Attach. 4 at 10:17–22.) Defendant claims the parties orally agreed that for the first month of the parties' business relationship Defendant would charge $165 per truck load of Plaintiff's merchandise, which included: loading fees; unloading fees, printing and labeling fees; and thirty days of storage. (Dkt. 56 at 14–15; *id.*, Attach. 4 at 10:10–17.) However, Defendant asserts that the parties agreed to a storage rate of $4.00 per pallet per *day*, not month, that Plaintiff's merchandise remained in Defendant's warehouse past the initial thirty days. (Dkt. 56 at 14–15; *id.*, Attach. 4 at 10:10–17.)

### 3.    Diverging Accounts of the Signed Quote

After June 2022, the parties then engaged in business for nearly a year, from July 2022 to July 2023. (Dkt. 54 at 104:9–11.) The parties had minimal communication after June 2022. From August 2022 until July 2023, Mr. Covarrubias regularly e-mailed Plaintiff's employees, particularly Nancy Ramos ("Ms. Ramos"), an associate in Plaintiff's imports department, to inquire about or forward pending invoices. (*See e.g.* Dkt. 56, Attach. 5 at 33; Dkt. 56, Attach. 3 at 10:1–5.) Ms. Valdez testified that she did not communicate with Mr. Covarrubias until July 2022, when she e-mailed Mr. Covarrubias with a request to speak over information sharing issues. (Dkt. 54 at 35:14–22.)

Ms. Valdez did not speak to Mr. Covarrubias again until 2023. (Dkt. 54 at 35:23–36:2.) On May 30, 2023, Ms. Valdez e-mailed Mr. Covarrubias asking about Defendant's capacity to load and unload rolls of plastic turf. (Dkt. 56, Attach. 7 at 5; Dkt. 54 at 36:4–20.) The parties agree that

nothing happened immediately thereafter with respect to this potential new business opportunity. (Dkt. 54 at 36:4–25.)

On July 24, 2023, Mr. Covarrubias e-mailed Ms. Valdez with the subject line "missed call." (Dkt. 56, Attach. 8 at 4.) Ms. Valdez asked Mr. Covarrubias if she could call him to follow up on a project they spoke about a month prior. (*Id.* at 3.) To estimate the costs for the turf project, she asked him to send her the rates they agreed to for the storage of Plaintiff's merchandise. (Dkt. 54 at 37:11–17.) A little over an hour later, Mr. Covarrubias replied to Ms. Valdez's initial e-mail and attached a copy of the quote dated June 6, 2022, with his signature. (Dkt. 56, Attach. 8 at 3–5.)

On July 25, 2023, Ms. Valdez contacted Mr. Covarrubias to discuss concerns related to the invoices sent by Defendant to Plaintiff. (Dkt. 54, at 93:9–20, 114:10–115:4.) They then spoke over a video call. (*Id.*) After their conversation, Ms. Valdez sent Mr. Covarrubias an e-mail outlining what they had spoken about in their video call. (Dkt. 56, Attach. 9 at 5.) In that e-mail, Ms. Valdez claimed that Defendant had charged Plaintiff $4.00 per pallet per *day* as opposed to the $4.00 per pallet per *month* it remained in the warehouse over thirty days, and that Defendant admitted to making an error. (*Id.*) She demanded that Defendant return the money Plaintiff had paid on invoices that charged more than $4.00 per pallet per month. (*Id.*) She requested Mr. Covarrubias call her that day to discuss returning the money. (*Id.*) Mr. Covarrubias responded saying that he had a meeting that evening with Defendant's accountant and that the matter was not as simple as Ms. Valdez claimed. (*Id.* at 4.)

Mr. Covarrubias and Ms. Valdez had a second phone call to discuss the invoices. This time, Ms. Valdez spoke with Cynthia Covarrubias ("Ms. Covarrubias"), Mr. Covarrubias's daughter and manager for Defendant, to discuss the allegations of incorrect invoices. (Dkt. 54 at 116:21–117:7, 142:18–143:12.) This phone conversation took place primarily between Ms. Covarrubias and Ms.

Valdez, although Mr. Covarrubias was present on the line. (Dkt. 54 at 116:21–117:7, 142:18–143:12.) Ms. Covarrubias maintained that Defendant did not overbill Plaintiff and that the rates were correctly billed. (*Id.* at 144:4–17.) There were no conclusions or next steps the parties agreed to after this phone call.

**B.    Procedural Background**

On August 22, 2023, Plaintiff filed its complaint against Defendant on the basis of the following claims: (1) breach of contract; (2) violation of the Texas Deceptive Trade Practices Act (DTPA); (3) fraud and fraud in the inducement; and (4) money had and received, and unjust enrichment. (Dkt. 1 at 4–7.) Plaintiff later dropped its DTPA claim against Defendant. (Dkt. 62 at 2 n.1.) On February 12, 2024, Plaintiff moved for a temporary restraining order and preliminary injunction to prevent Defendant from spending assets that Plaintiff claimed were its based on the payments it made. (Dkt. 21.) The Court issued a temporary restraining order (Dkt. 45) and held a hearing on Plaintiff's motion for a preliminary injunction on May 31, 2024. (Min. Entry for May 31, 2024.) The Court subsequently issued a preliminary injunction preventing Defendant from spending the funds remaining from Plaintiff's payments until this case concluded. (Dkt. 58.)

Plaintiff filed a Motion for Partial Summary Judgment on its breach of contract and money had and received claims, arguing that it was entitled to summary judgment as a matter of law on both claims. (Dkt. 55 at 3, 5.) Defendant contested Plaintiff's Motion and contended, namely, that there was a genuine dispute as to whether a valid contract existed. (Dkt. 59 at 3–6.) Defendant also objected to Plaintiff's Exhibit 3, a contract between Plaintiff and a storage supplier in El Paso, arguing that it was inadmissible because it was: (1) not relevant; (2) hearsay evidence and did not meet an exception; and (3) not properly authenticated. (Dkt. 61 at 2; *See* Dkt. 55, Attach. 1 at 21–22; *See also* Dkt. 62, Attach. 1 at 21–22.)

Defendant also filed its own Motion for Partial Summary Judgment, arguing that Plaintiff could not sustain its fraud and fraudulent inducement claims against it because Plaintiff could not show that Defendant made a material misrepresentation, nor that Plaintiff justifiably relied on any alleged misrepresentation. (Dkt. 56 at 8–17.)[2] Plaintiff opposed Defendant's Motion and argued that summary judgment was not appropriate because there were genuine issues of material fact as to whether Defendant made a material misrepresentation, and whether Plaintiff justifiably relied on Defendant's alleged misrepresentation. (Dkt. 62 at 4–11.)

## <u>Legal Standard</u>

### A.    **Summary Judgment**

Summary judgment is proper "when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on the substantive law at issue and whether "disputes over the facts might affect the outcome of the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) A "genuine dispute" is one where "the evidence is such that a reasonable jury might return a verdict for the nonmoving party." *Id.* at 248.

The moving party carries the initial burden to demonstrate there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It may do this by merely identifying the absence of evidence to support the nonmovant's case. *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993). In support of its motion, the movant may rely on "the pleadings,

---

[2] Additionally, Defendant originally moved for partial summary judgment on Plaintiff's DTPA claim arguing that Plaintiff was not a "consumer" under the DTPA and did not meet the remaining elements of its claim. (Dkt. 56 at 5–8.) However, Plaintiff abandoned its DTPA claim in its Response to Defendant's Motion for Partial Summary Judgment by explicitly stating it would not continue to raise this claim and did not defend against Defendant's arguments. (Dkt. 62 at 2 n.1.) *Terrey's Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022) (finding the district court did not err when a party abandoned a claim by failing to defend it).

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (1986) (internal quotations omitted). If the movant meets this burden, the burden then shifts to the non-moving party to show that there is a "genuine issue for trial" based on the record evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted). The parties must rely on record evidence, not on conclusory statements to support their claims for and against summary judgment. *Ashe*, 992 F.2d at 543. When each party moves for summary judgment, the "motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists, and that it is entitled to judgment as a matter of law." *W. Power, Inc. v. TransAm. Power Prods., Inc.*, 316 F.Supp.3d 979, 986 (S.D. Tex. June 7, 2018) (quoting *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004)).

When evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (internal citations omitted). The court may grant summary judgment for the moving party only after the court has found that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," and there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587 (internal quotations omitted). In making this determination, the court does not make "[c]redibility determinations," "weigh[] the evidence," nor "draw[] legitimate inferences from facts." *Anderson*, 477 U.S. at 255.

## Discussion

**A.    Evidentiary Objection**

As a preliminary matter, Defendant raises an evidentiary objection to Plaintiff's Exhibit 3 of Plaintiff's Motion for Partial Summary Judgment. (Dkt. 61; *See* Dkt. 55, Attach. 1 at 21–22.) In support of its Motion for Partial Summary Judgment, Plaintiff submitted a contract it entered into with A.A. Customs Brokers, another provider of storage services, to support its argument that it would not have agreed to a rate of $4.00 per pallet per day. (Dkt. 55 at 2; *id.*, Attach. 1 at 21–22; *see also* Dkt. 62, Attach. 1 at 21–22.) Plaintiff contended that it would not have agreed to pay more for storage services than it had paid in the recent past to a comparable provider. (Dkt. 55 at 2.) Plaintiff had previously submitted this exhibit at the hearing on its Motion for a Preliminary Injunction to show that Plaintiff does not normally sign contracts prior to beginning business. (Dkt. 49 at 15.) The Court admitted the exhibit at the hearing. (Dkt. 54 at 32:14-24.)

Defendant argues that this contract is inadmissible because it is: (1) not relevant; (2) hearsay that does not meet an exception; and (3) not properly authenticated under Federal Rule of Evidence 902(11). (Dkt. 61 at 2.) Defendant avers that not enough information is known about the contract and relationship between Plaintiff and A.A. Customs Brokers to determine its relevancy to the instant action. (*Id.* at 3.) Defendant explains that without more information, it cannot compare the services offered by Defendant to those offered by A.A. Customs Brokers. (*Id.*)

First, the contract between Plaintiff and A.A. Customs Brokers is not inadmissible hearsay. "Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance, and are nonhearsay." *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994) (internal citations omitted). Whether signed or unsigned, "[a] contract is a verbal act." *Id.* Moreover, "[t]he admission of a contract to prove the operative fact of that contract's existence thus cannot be the subject of a valid hearsay objection." *Id.* (internal citations omitted). Here, Plaintiff offers its contract with A.A. Customs Brokers not to

assert the truth of any statements therein. Rather, it offers the contract to demonstrate that it had previously entered into a contract with another storage company at the same rate it entered into with Defendant.

Even though it is not a signed contract, Ms. Valdez testified that this contract was executed between Plaintiff and A.A. Customs Brokers. (Dkt. 54 at 33:7–9, 34:24–25.) This is unlike cases where the court found an unsigned contract was inadmissible because a party wanted to submit the unsigned contract as proof of the terms of the trust the parties disputed. *CSFB 1998-C2 TX Facilities, L.L.C. v. Charles Schwab & Co., Inc.*, 2017 WL 2199124, at *2 (N.D. Tex. April 28, 2017) (finding the unsigned document the defendant claimed created the trust and established its terms was inadmissible hearsay when offered to prove the terms of the trust). As such, the contract is not inadmissible hearsay because Plaintiff offers the contract to demonstrate its existence, not the terms contained therein.

Second, Defendant contests the authenticity of the contract. Under Rule 902(11), a "certified domestic record of a regularly conducted business activity" can be authenticated "by the certification of the custodian or another qualified person." Fed. R. Evid. 902(11). A contract has been found to be authenticated pursuant to the Federal Rules when the plaintiff submitted an affidavit by the custodian of records who attested that the contract was "kept in the ordinary course of business" and that the custodian had "personal knowledge" of the contract. *Kikuchi v. Silver Bourbon, Inc.*, 2021 WL 2210915, at *3 (E.D. La. June 1, 2021).

Plaintiff has not submitted sufficient evidence to authenticate its contract with A.A. Customs Broker. Plaintiff did not submit a declaration or affidavit alongside the contract with A.A. Customs Broker. (Dkt. 55, Attach. 1 at 21–22.) At the preliminary injunction hearing, Ms. Valdez testified this contract was entered into by Plaintiff and A.A. Customs Brokers to provide "exactly

the same services" Defendant provides. (Dkt. 54 at 33:7–9.)  Ms. Valdez explained that this contract was entered into three months prior than its purported contract with Defendant for storage services in El Paso. (*Id.*) However, at no point does Ms. Valdez testify to her personal knowledge of the circumstances surrounding the contract, nor that she is a custodian or records or holds any similar position to be able to authenticate the contract.

Nevertheless, Plaintiff's failure to authenticate its contract with A.A. Customs Broker is not fatal to its admission. "[E]vidence need not be authenticated or otherwise presented in an admissible form" to be admitted at the summary judgment stage. *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017). Instead, "materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *Id.* (internal citations omitted).

However, the relevancy of this contract in support of Plaintiff's argument remains tenuous. Plaintiff argues that the quote dated June 6, 2022, and signed by both Ms. Valdez and Mr. Covarrubias is a valid contract. (Dkt. 55 at 3–4.) This document lists a rate of $4.00 per pallet per month—which is what Plaintiff maintains is the rate agreed to by the parties. (*Id.*, Attach. 1 at 43.) Defendant counters that the parties agreed to a rate of $4.00 per pallet per day. (Dkt. 59 at 4.) Plaintiff intends to use its contract with A.A. Customs Broker to show that it would not have agreed to Defendant's rate because it is significantly higher than what it paid for storage services through A.A. Customs Broker. (Dkt. 55 at 6.)

Yet, Plaintiff has already submitted the signed quote dated June 6, 2022, as evidence that the parties agreed to a rate of $4.00 per pallet per month. (Dkt. 55, Attach. 1 at 43.) The A.A. Customs Broker Contract contains the same rate Plaintiff claims is the rate it agreed to with Defendant—$4.00 per pallet per month. (Dkt. 55, Attach. 1 at 21–22; *See also* Dkt. 62, Attach. 1

at 21–22.) This contract does not add further support to Plaintiff's contention that it did not agree to Defendant's alleged rate of $4.00 per pallet per day.

In *Romar*, the court considered several evidentiary objections to a motion for summary judgment on a breach of contract claim. *Romar/Mec L.L.C. v. Silicon USA, Inc.*, 2013 WL 12108133, at *3 (S.D. Tex. Nov. 18, 2013). The nature of the parties' agreement concerned the plaintiff's expected delivery of industrial welding equipment manufactured by a third party to the defendant. *Id.* at *1. The plaintiff moved for summary judgment on its breach of contract claim arguing that it had completed the delivery on schedule. *Id.* at 2–3. To support its motion, the plaintiff submitted several exhibits, including the declaration of the president of the third company who manufactured the welding equipment. *Id.* at *5–6. The defendant raised objections to certain portions and attachments of this declaration. *Id.* The court overruled the defendant's objections because it ultimately did not rely on the contested portions of the declaration in determining whether plaintiff was entitled to summary judgment. *Id.*

Like *Romar*, the Court need not rely on Plaintiff's contract with A. A. Customs Brokers in reviewing the parties' motions for partial summary judgment. *Id.* As such, the court DENIES Defendant's motion to strike at this stage.

**B.    Plaintiff's Motion for Partial Summary Judgment**

**1.    Breach of Contract**

In diversity cases, the court must apply state law to claims rising under state law. *Mission Pharmacal Co. v. Molecular Biologicals, Inc.*, 112 F.4th 337, 340 (5th Cir. 2024). Therefore, the Court will apply Texas law to evaluate the claims at issue.

Plaintiff argues it is entitled to summary judgment on its breach of contract claim because the parties agreed to a valid contract with Defendant where the parties agreed to a storage rate of

$4.00 per pallet per month past the first thirty days. (Dkt. 55 at 3–5; *id.*, Attach. 1 at 43.)  To establish breach of contract, a claim must show: "(1) the existence of a valid contract, (2) the plaintiff's performance or tendered performance, (3) the defendant's breach of the contract, and (4) damages as a result of the breach." *AKB Hendrick, L.P. v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 234 (Tex. App. Aug. 22, 2012) (internal citations omitted). To demonstrate a valid contract, the following elements must be met: "(1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *E-Learning L.L.C. v. AT&T Corp.*, 517 S.W.3d 849, 858 (Tex. App. March 1, 2017) (internal citations omitted).

Plaintiff argues that the quote dated June 6, 2022, and signed by both Ms. Valdez and Mr. Covarrubias is a valid contract that governs the parties' transactions. (Dkt. 55 at 3; *id.*, Attach. 1 at 43.) It maintains that this document reflects the parties agreed to a rate of $4.00 per pallet per *month* that Plaintiff's merchandise was stored past the initial thirty days. (Dkt. 55, Attach. 1 at 43.) Plaintiff further claims that it performed its part of the alleged contract "by paying all outstanding invoices as they became due." (Dkt. 55 at 4.) Plaintiff also contends there is no dispute that Defendant breached the alleged contract by charging $4.00 per pallet per day instead of per month, more than the rate the parties had agreed to in the quote from June 6, 2022. (*Id.*) It also claimed that it was damaged by more than $1.7 million dollars, the difference between the $4.00 per pallet per month storage rate and what it paid Defendant on the invoices. (*Id.*)

While the parties do not contest that they entered into an agreement, the parties largely dispute whether they assented to the same agreement and present conflicting evidence to this point. "Mutual assent exists when the parties agree to the same thing, in the same sense, and at the same

time." *Chubb Lloyds Ins. Co. of Tex. v. Buster & Cogdell Builders, L.L.C.*, 668 S.W.3d 145, 151 (Tex. App. Feb. 2, 2023) (internal citations omitted). This "is an objective inquiry which turns on what the parties said or did, not on their subjective states of mind." *Id.* (internal citations omitted).

Defendant claims that the quote dated June 6, 2022, is not a valid contract because the document was a quote, *not* a contract. (Dkt. 59 at 9.) Additionally, Defendant maintains that it signed the quote dated June 6, 2022, for the first time in July 2023. (Dkt. 56 at 15; *id.*, Attach. 8 at 5; Dkt. 54 at 108:18–109:7, 112:11–15.) A quote can become an offer if it "reasonably appear[s] that assent is all that is needed to ripen the offer into a contract." *Stanwood Boom Works, L.L.C. v. B.P. Expl. & Prod., Inc.*, 476 F.App'x 572, 574 (5th Cir. 2012).

The parties dispute what constitutes assent. To start, Plaintiff contends the signed quote dated June 6, 2022, is a valid contract. (Dkt. 55 at 3; *id.*, Attach. 1 at 43.) While a signature can be evidence of a binding agreement, it is not necessary unless the parties contemplated this as such. *See Chubb Lloyds Ins. Co.*, 668 S.W.3d at 151 (internal citations omitted) Both Ms. Valdez and Mr. Covarrubias presented testimony revealing that signatures are not dispositive indicators of a party's assent to this quote. Ms. Valdez testified that it is not Plaintiff's custom to sign contracts for storage services. (Dkt. 54 at 25:23–25.) She explained that after Plaintiff reaches an agreement as to the storage rates, it is Plaintiff's normal course of business to then introduce the storage company to her team as a new vendor. (*Id.* at 23:16–23.) Mr. Covarrubias testified that a party must agree to the quote in order to accept it, and there are two signature lines at the bottom of the June 6, 2022, quote to allow for assent from both parties. (Dkt. 56, Attach. 4 at 22:7–12.) Consequently, Plaintiff and Defendant do not share an understanding of whether a signature is necessary to convert the quote dated June 6, 2022, into a binding contract.

More importantly, the parties heavily contest when the quote dated June 6, 2022, was signed. Plaintiff argues the document dated June 6, 2022, and signed by both Ms. Valdez and Mr. Covarrubias is a valid contract. (Dkt. 55 at 3–6; *id.*, Attach. 1 at 43.) Specifically, Ms. Valdez maintains that the quote was signed and sent by Mr. Covarrubias during the first week of June 2022. (Dkt. 56, Attach. 4 at 20:21–21:3.) Ms. Valdez does not remember when she signed the quote dated June 6, 2022. (Dkt. 54 at 25:18–22.) Ms. Ramos testified in her deposition that she received the signed quote dated June 6, 2022, from Ms. Valdez in June 2022, and had stored it away immediately. (Dkt. 56, Attach. 3 at 12:7–25.) She claims to have never seen or received an unsigned version of this quote. (*Id.* at 11:9–12:1.) While Plaintiff claims to have received the quote with Mr. Covarrubias' signature in June 2022, there is no record of this e-mail. (Dkt. 54 at 118:5–7, Dkt. 56, Attach. 6 at 20:2–20.)

In *Stelluti Kerr*, the court found that summary judgment was improper when there was a factual dispute about *when* the parties had intended to form a contract. *Stelluti Kerr, L.L.C. v. Mapei Corp.*, 2015 WL 13450984, at *4 (N.D. Tex. Sept. 24, 2015). There, the plaintiff contended that the price quote was the offer, while the defendant maintained that the purchase order was the offer. *Id.* at *3. The ultimate terms the parties assented to would be determined by which document was considered the offer. *Id.* at *4. The evidence submitted by the parties on their respective motions for summary judgment "create[d] anything but a coherent contract of unambiguous terms." *Id.* As such, summary judgment was not appropriate on either party's motion. *Id.*

Similar to *Stelluti Kerr*, Plaintiff and Defendant offer conflicting accounts as to when the quote dated June 6, 2022, was signed. Plaintiff alleges the quote dated June 6, 2022, was signed and sent back by Mr. Covarrubias to Ms. Valdez during the first week of June 2022. (Dkt. 56, Attach. 6 at 20:21–21:14.) Mr. Covarrubias counters that he signed the quote dated June 6, 2022,

for the first time in July 2023, after Ms. Valdez contacted him. (Dkt. 56 at 15; *id.*, Attach. 4 at 12:11–13:10; *id.*, Attach. 8 at 3–5; Dkt. 54 at 108:18–109:7, 112:11–15.)

The parties' conflicting accounts regarding the assent to the quote dated June 6, 2022—specifically, the storage rate for pallets kept in the warehouse over the first thirty days—form the foundation of this litigation. "[W]hen the parties have submitted evidence of contradictory facts, 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Willis v. Roche Biomedical Lab'ys, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Anderson*, 477 U.S. at 255). Plaintiff and Defendant offer divergent theories and supporting evidence as to when the quote dated June 6, 2022, was signed by both parties. This genuine issue of fact is one appropriate for a jury's consideration. Therefore, summary judgment for Plaintiff on its breach of contract claim is not proper.

### 2.    Money Had and Received

Plaintiff argues there is no genuine issue of material fact that Defendant possesses money that belongs to Plaintiff. (Dkt. 55 at 5.) Plaintiff claims Defendant overcharged Plaintiff for storage services by charging $4.00 per pallet per day as opposed to per month. (*Id.* at 5–6.)  A claim for money had and received is available "when the defendant obtains money which in equity and good conscience belongs to the plaintiff." *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. May 15, 1997) (internal citations omitted). This claim relates to the doctrine for unjust enrichment. *Id.* (internal citations omitted). "When a defendant has been unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation upon the defendant to restore the benefits to the plaintiff." *Burlington N. R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App. April 30, 1996) (internal citations omitted). Moreover, a claim of unjust enrichment "is properly dismissed when a valid, express contract governing the subject matter of

the dispute exists." *Curtis v. Cerner Corp.*, 621 B.R. 141, 177 (S.D. Tex. Aug. 24, 2020) (internal quotations omitted).

It is genuinely disputed at this stage whether the signed quote dated June 6, 2022, is a binding contract between the parties. The parties fervently dispute the precise terms of their agreement. The terms are necessary to evaluate whether there was unjust enrichment or agreed-upon payment. Defendant claims that the parties agreed to a rate of $4.00 per pallet per day that it is stored over the initial thirty days at Defendant's warehouse. (Dkt. 56 at 14; *id.*, Attach. 4 at 10:18–22, 25:7–9.) Plaintiff maintains the signed quote dated June 6, 2022, is a valid contract that demonstrates the parties agreed to $4.00 per pallet per month it stored over the first thirty days. (Dkt. 55 at 3, 43.) Knowing the exact terms of the parties' agreement is critical to determining whether Defendant overcharged Plaintiff. Accordingly, summary judgment on Plaintiff's money had and received claim for Plaintiff is not appropriate.

## C.     Defendant's Motion for Partial Summary Judgment

### 1.     Fraud

#### a.     Sufficiency of the Pleadings

The Court first addresses Defendant's argument that Plaintiff's fraud and fraud in the inducement claims do not meet the pleading standards of Rule 9 of the Federal Rules of Civil Procedure. (Dkt. 56 at 17–18.) A claim of fraud must meet the particularity requirements set forth in Rule 9. *Crosswell v. Martinez*, 120 F.4th 177, 184 (5th Cir. 2024) (citing Fed. R. Civ. P. 9(b)). Beyond Rule 8's general pleading requirements, Rule 9 requires "allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (internal citations omitted). A challenge under Rule 9(b) may serve as a basis for summary judgment. *Summers v. Liberty Savs. Bank*, 2021

WL 1240788, at *8 (N.D. Tex. March 8, 2021) (internal citations omitted). When a claim is challenged on the sufficiency of the pleadings alone the court should evaluate the claim as it would a 12(b)(6) motion to dismiss. *Id.* (internal citations omitted).

Defendant not only raises a Rule 9(b) challenge to the pleadings, but also challenges elements of Plaintiff's fraud claim. (Dkt. 56 at 9–17.) The Court finds that the pleadings and record reflect Plaintiff has met Rule 9's heightened standards. Plaintiff alleges that Defendant represented that it would charge a rate of $4.00 per pallet per month for storage services. (Dkt. 1 at 6; Dkt. 62 at 6.) Plaintiff also claims that Defendant made this false representation because it ended up charging $4.00 per pallet per day, not month. (Dkt. 1 at 6; Dkt. 62 at 8–9.) It further alleges that the Defendant made this representation by signing and sending a quote dated June 6, 2022, during the first week of June 2022. (Dkt. 55 at 3; *id.*, Attach. 1 at 43; Dkt. 56, Attach. 6 at 21:11–14, 22:14–20.) Thus, Plaintiff has sufficiently pleaded elements of a claim of fraud, passing Rule 9's heightened bar and the particulars of the purported fraudulent statements.

Consequently, the Court will address Defendant's remaining arguments related to the elements of material misrepresentation and justifiable reliance.

### b.    Material Misrepresentation

Defendant argues that it is entitled to summary judgment on Plaintiff's fraud claim. (Dkt. 56 at 8.) Defendant needs to "conclusively disprove" at least one element of a claim for summary judgment to be proper. *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 39 (Tex. App. Dec. 9, 2015). To demonstrate fraud, a plaintiff must show that: "(1) the defendant made a false, material representation; (2) the defendant 'knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;' (3) 'the defendant intended to induce the plaintiff to act upon the representation;' and (4) the plaintiff justifiably relied on the representation,

which caused the plaintiff injury." *Barrow-Shaver Res's. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. June 28, 2019) (internal citations omitted).

Defendant contends it did not misrepresent its storage rates nor misrepresent the amount Plaintiff owed Defendant. (Dkt. 56 at 16.) In its Complaint, Plaintiff pleaded that Defendant misrepresented the storage rate it was to charge Plaintiff because they agreed on a rate of $4.00 per pallet per month, but Defendant instead charged $4.00 per pallet per day. (Dkt. 1 at 4–5; *See also* Dkt. 56 at 8.) "A representation is material if the representation was important to the plaintiff in making a decision, such that a reasonable person would be induced to act on and attach importance to the representation making the decision." *Barrow-Shaver Res's. Co.*, 590 S.W.3d at 496 (internal citations omitted). A false representation "consists of words or other conduct that suggest to the plaintiff that a fact is true when it is not." *Id.* (internal citations omitted). However, "[a] statement is not fraudulent unless the speaker knew it was false when made or the speaker made it recklessly without knowledge of the truth. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 526 (Tex. Jan. 16, 1998) (internal citations omitted).

Plaintiff contends that price was a critical factor in determining whether to enter into business with Defendant. (Dkt. 62 at 8–9.) It argues that it rejected the quote from May 30, 2022, because the storage rates were too high—which Ms. Valdez testified that she discussed with Mr. Covarrubias. (Dkt. 54 at 13:14–16.) It is evident that the rate for pallet storage exceeding the initial thirty days is a material term—central to the parties' litigation.

First, Defendant has maintained throughout the litigation that it never represented its storage services at the $4.00 per pallet per month. Instead, Defendant claims the parties reached an oral agreement where it would charge $165.00 per truck load—including the loading, unloading, printing, and labeling fees, as well as thirty days of storage—and $4.00 per pallet per

day after the first thirty days. (Dkt. 54 at 106:8–13; Dkt. 56 at 14–15; *id.*, Attach. 4 at 10:1–22.) Mr. Covarrubias further explained that Plaintiff did not accept the quote dated June 6, 2022, and that Mr. Covarrubias and Ms. Valdez continued to negotiate rates. (Dkt. 56, Attach. 4 at 10:1–22.) Mr. Covarrubias testified that two days prior to Plaintiff's merchandise arriving at the warehouse, he and Ms. Valdez "corrected" the quote and agreed to a rate of $4.00 per pallet per day over the initial thirty days. (Dkt. 56, Attach. 4 at 10:1–22; Dkt. 54 at 106:14–23.)

Second, Defendant contends that Mr. Covarrubias did not sign the quote in June 2022. Defendant acknowledges the quote dated June 6, 2022, includes a term stating that Defendant would charge $4.00 per pallet per month. (Dkt. 56, Attach. 4 at 10:1–5; *id.*, Attach. 8 at 2.) However, Defendant argues that Mr. Covarrubias did not sign the quote dated June 6, 2022, until July 2023. (Dkt. 56, Attach. 4 at 12:11–13:10; Dkt. 54 at 108:13–17.) Mr. Covarrubias testified that he signed the quote for the first time in July 2023 in order for Defendant to secure a new business opportunity of storing turf. (Dkt. 54 at 108:18–109:7; Dkt. 56, Attach. 4 at 14:6–10; *id.*, Attach. 8 at 3–5) He e-mailed this quote to Ms. Valdez with his signature then. (Dkt. 56, Attach. 8 at 3–5.)

Plaintiff counters that this quote was signed and received during the first week of June 2022 by Ms. Valdez, as evidenced by Mr. Covarrubias's signature and the date on the quote. (Dkt. 56, Attach. 6 at 20:2–21:22.) Ms. Ramos testified that Ms. Valdez had given her this agreement in June 2022, but Ms. Ramos attests she did not read the document. (Dkt. 56, Attach. 3 at 12:17–13:8.) Yet, this is heavily disputed. The date on which the quote was signed is important because the alleged material misrepresentation needs to have predated the start of the business relationship. Finding that the quote from June 6, 2022, was first signed in July 2023 would mean that Plaintiff

could not have relied on this representation prior to sending its merchandise to Defendant's warehouse.

The court's role at summary judgment is not to evaluate the credibility of the witnesses nor weigh the evidence. *Anderson*, 477 U.S. at 256. The conflicting evidence offered by both parties fails to demonstrate that there is no genuine issue as to whether Mr. Covarrubias made the purported representation, and if so, whether he made it in June 2022. Accordingly, a genuine dispute of material fact exists as to whether the alleged misrepresentation was made at the critical time prior to the parties' business transactions, or at all. A jury could reasonably find that Mr. Covarrubias made the purported assertion. A jury could also conclude that the agreement was signed not in 2022, but in 2023 when Mr. Covarrubias sent the document to Ms. Valdez. Therefore, summary judgment on the fraud claim is improper because there is a genuine issue of material fact as to whether Mr. Covarrubias made the alleged representation and whether he did so in June 2022.

### c.    Justifiable Reliance

Defendant argues that there is no evidence to support finding Plaintiff justifiably relied on any alleged misrepresentation to its detriment. (Dkt. 56 at 9–13.) Defendant primarily contends that Plaintiff did not "exercise ordinary care" by paying the invoices Defendant sent Plaintiff from July 2022 until July 2023 which reflected a $4.00 per pallet per day storage rate. (*Id.*)

To establish justifiable reliance, "the plaintiff must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable." *Barrow-Shaver Res's. Co.*, 590 S.W.3d at 496. A party cannot claim justifiable reliance when it fails to "exercise ordinary care for the protection of [its] own interests and is charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated." *AKB Hendrick, L.P.*, 380 S.W.3d at 232 (citing *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. Dec. 5, 1962)). A party cannot

"justifiably rely on a representation if there are red flags indicating such reliance is unwarranted." *Baxsto, L.L.C. v. Roxo Energy Co., L.L.C.*, 668 S.W.3d 912, 939–40 (Tex. App. April 20, 2023) (internal quotations omitted).

A "red flag" is "a series of events that warrant further investigation." *Id.* "Either 'red flags' alone or direct contradiction [with a written agreement] alone can negate justifiable reliance as a matter of law." *J.P. Morgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 660 n.2 (Tex. March 23, 2018) (internal citations omitted). When considering whether a plaintiff should have detected "red flags," the court "views the circumstances in their entirety while accounting for the parties' relative levels of sophistication." *Baxsto, L.L.C.*, 668 S.W.3d at 940 (quoting *Orca Assets*, 546 S.W.3d at 656). However, a "plaintiff's failure to inspect will not defeat an action in fraud because the defrauded party is entitled to rely on the fraudulent party's representations." *Roberts v. United N.M. Bank at Roswell*, 14 F.3d 1076, 1080 (5th Cir. 1994) (internal quotations omitted).

Defendant argues that Plaintiff had significant opportunities to learn that Defendant was charging $4.00 per pallet per day because it outlined its charges in the invoices it sent Plaintiff. (Dkt. 56 at 12–13.) From July 21, 2022, until July 24, 2023, Defendant billed Plaintiff approximately 142 times. (*See* Dkt. 59, Attach. 6.) In the first month, Defendant sent Plaintiff invoices reflecting a charge of $165.00 per truck load of Plaintiff's merchandise that Defendant received. (Dkt. 59, Attach. 6 at 3–4, 8–35.) From July 2022 to July 2023, Defendant contends it billed Plaintiff at a rate of $4.00 per pallet per day stored at Defendant's warehouse past the initial thirty-day period. (Dkt. 56, Attach. 5.) These invoices were all processed.

Moreover, Defendant highlights that several of Plaintiff's employees were involved in the invoice approval and processing who could have discovered the alleged misrepresentation. (Dkt.

56 at 9–13.) Ms. Valdez testified that it was not within her role to approve invoices or charges. (Dkt. 54 at 7:18–20.) Ms. Ramos testified in her deposition that she is responsible for approving the "in-and-out fees," but she does not typically approve invoices as part of her role. (Dkt. 56, Attach. 3 at 15:4–17:2.) She explained that she only received the invoices from Defendant because she spoke Spanish. (*Id.*) Ms. Ramos claimed she did not approve the invoices nor the charges for Defendant's invoices, but that she did approve payment for the in-and-out fees for one invoice. (*Id.* at 19:24–20:8, 20:24–21:11.) Moreover, Mona Modi ("Ms. Modi"), Plaintiff's accounting director, testified in her deposition that she did not approve the charges on Defendant's invoices and did not know who in the accounts payable department approved them. (Dkt. 56, Attach. 12 at 13:11–20.)

There is a lack of clarity regarding who regularly approves invoices for Plaintiff, and who was supposed to and did so for the invoices Defendant sent Plaintiff. Ms. Ramos and Ms. Modi both have significant experience working for Plaintiff. Ms. Modi, for instance, has worked for Plaintiff for over twenty years. (Dkt. 56, Attach. 11 at 42:15–17.) Ms. Ramos has worked for Plaintiff for over nineteen years. (*Id.*, Attach. 3 at 9:23–6.) Based on the decades of experience working for Plaintiff, Ms. Ramos and Ms. Modi's tenure supports finding Plaintiff is a sophisticated party. *AKB Hendrick, L.P.*, 380 S.W.3d at 232 (finding an investment banker with several years of experience was a sophisticated party).

Despite Plaintiff's sophistication, Defendant must still identify "red flags" that would have indicated to Plaintiff that it should not have relied on Defendant's alleged representation. A party's sophistication does not preclude recovery for an action for fraud. *Baxsto, L.L.C.*, 668 S.W.3d at 940; *see also Roberts*, 14 F.3d at 1080. In *Baxsto*, the court held that plaintiff's status as a sophisticated party in the oil and gas industry, alone, was not a "red flag," nor sufficient to negate

a possibility of finding that plaintiff justifiably relied on defendant's representations regarding the lease and sale of mineral interests. *Baxsto, L.L.C.*, 668 S.W.3d at 940. There, the court found the defendant did not meet its burden to negate that the plaintiff could not establish justifiable reliance as a matter of law. *Id.*

Here, Defendant has not identified any other incidents or facts besides the invoices themselves that could be considered "red flags" that Plaintiff should have noticed over the course of their business relationship. Here, Defendant argues that Plaintiff cannot establish it justifiably relied on Defendant's alleged representation of the storage rate because its employees reviewed the invoices—which laid out the charges—and approved them. (Dkt. 56 at 9–13.) Defendant details the testimony from Plaintiff's employees to demonstrate that there was an approval process for invoices and that several people reviewed the invoices. (*Id.*) However, Defendant has not identified a red flag that would impose a duty upon Plaintiff to further investigate the charges in the invoices. A failure to investigate, absent any red flags, does not defeat Plaintiff's claim of fraud. *See Roberts*, 14 F.3d at 1080. (internal citations omitted) (finding the plaintiff did not have "knowledge of facts sufficient to lead a reasonably prudent person to further" inquire about the appraisal). As such, Defendant has not negated as a matter of law the justifiable reliance element of Plaintiff's claim. Accordingly, Defendant has not met its burden for summary judgment.

### 2.    Fraudulent Inducement

Fraudulent inducement shares the "same basic elements" as a claim of fraud. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. June 22, 2018). "Because fraudulent inducement arises only in the context of a contract, the existence of a contract is an essential part of its proof." *Id.*

As discussed above, there are genuine disputes of material fact concerning whether the June 6, 2022, document is a valid contract. Moreover, Defendant did not negate either the material

representation or justifiable reliance element of Plaintiff's fraud claim as a matter of law. Accordingly, summary judgment for Defendant is not warranted for Defendant on Plaintiff's fraudulent inducement claim.

## Conclusion

Defendant is not entitled to summary judgment on Plaintiff's claim of fraud and fraudulent inducement because it has failed to demonstrate no genuine dispute of material fact as to the material misrepresentation or justifiable reliance elements of these claims. Plaintiff has not met its burden showing that there are no genuine issues of material fact regarding its breach of contract or money had and received claims. Additionally, the Court did not rely upon Plaintiff's Exhibit 3 in evaluating the parties' motions. Thus, Plaintiff's Motion for Partial Summary Judgment (Dkt. 55), Defendant's Motion for Partial Summary Judgment (Dkt. 56), and Defendant's Motion to Strike (Dkt. 61) are **DENIED**.

IT IS SO ORDERED.

SIGNED this March 24, 2025.

Diana Saldaña
United States District Judge